# ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Broadway 401 LLC, et al.,[1] | ) Case No. 10-10070 (KJC) |
|  | ) |
| Debtors. | ) Jointly Administered |
|  | ) RE: DOCKET NOS. 6 AND 45 |

### FINAL ORDER: (1) AUTHORIZING DEBTORS-IN-POSSESSION TO USE CASH COLLATERAL; (2) AUTHORIZING DEBTORS-IN-POSSESSION TO INCUR POST-PETITION FINANCING AND SECURED OBLIGATIONS; (3) GRANTING SECURITY INTERESTS AND PRIORITY PURSUANT TO 11 U.S.C. § 364(c) AND (d); (4) GRANTING ADEQUATE PROTECTION; (5) MODIFYING AUTOMATIC STAY; AND (6) GRANTING RELATED RELIEF

By motion (the "Motion") filed January 11, 2010, Broadway 401 LLC, Broadway Mass Associates LLC and Broadway Mass TIC I LLC, as debtors and debtors-in- possession herein (each individually, a "Debtor" and collectively, the "Debtors"), moved this Court for the entry of an interim order (the "Interim Order"): (A) (1) authorizing the Debtors to use Cash Collateral (as defined below); (2) authorizing the Debtors to continue to operate under their existing prepetition senior secured credit facility, as modified in certain respects, with PB Capital Corporation as agent ("Senior Agent") and the lenders named therein as Senior Lenders ("Senior Lenders"), and to obtain post-petition extensions of credit thereunder; (3) granting additional security interests and liens and superpriority claim status to Senior Agent and Senior Lenders pursuant to Sections 364(c) and 364(d) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); (4) granting adequate protection to Senior Agent and Senior Lenders; and

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Broadway 401 LLC, a Delaware limited liability company (6772), Broadway Mass Associates LLC, a Delaware limited liability company (8668), and Broadway Mass TIC I LLC, a Delaware limited liability company (3760). The address for each Debtor is 80 Broad Street, New York, NY 10004.

(5) modifying the automatic stay; and (B) requesting that this Court schedule (1) pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), an interim hearing (the "Interim Hearing") on the Motion to consider entry of the Interim Order pending the Final Hearing (defined below); and (2) pursuant to the Interim Order, a final hearing (the "Final Hearing") to consider entry of a final order granting all of the relief requested in the Motion and DIP Loan Documents on a final basis (the "Final Order").

The Interim Hearing having been held by this Court on January 12, 2010, and this Court having entered the Interim Order on January 12, 2010, and no objections to entry of the Final Order having been received, and this Court having reviewed and considered the Motion, together with all declarations (and exhibits) filed in support thereof, and upon the record made by the Debtors at the Interim Hearing and Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefor:

## THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.      Filing of Petition.  On January 11, 2010 (the "Petition Date"), the Debtors filed voluntary chapter 11 petitions under the Bankruptcy Code commencing their chapter 11 cases (the "Cases").  By order of this Court entered on January 12, 2010, the Cases are being jointly administered for procedural purposes only.  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are authorized to operate their business as debtors in possession.

B.      Committee Formation.  No official committee of unsecured creditors (a "Committee") has been appointed in the Cases.

C.      Filing of Prepackaged Chapter 11 Plan.  On the Petition Date, the Debtors filed their Joint Prepackaged Joint Plan of Reorganization (the "Plan").  The Court has scheduled

a combined hearing on March 16, 2010, to consider the adequacy of the Debtors' pre-petition disclosure statement and confirmation of the Plan.

        D.      Jurisdiction; Core Proceeding. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

        E.      Notice. Notice of the entry of the Interim Order and a copy of the Interim Order were served by the Debtors by first class mail on: (i) the United States Trustee; (ii) the District Counsel for the Internal Revenue Service; (iii) the District of Columbia Office of Tax and Revenue; (iv) the Senior Agent and Senior Lenders and their respective counsel; (v) all other known secured creditors of the Debtors and their counsel; (vi) the consolidated list of the twenty largest unsecured creditors of the Debtors; and (vi) any other party that has filed in these Cases a request for special notice with this Court and served such request upon Debtors' counsel. Such notice is appropriate and adequate under the circumstances set forth herein and presented to this Court, and complies with the provisions of Sections 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and any other applicable law.

        F.      Need for Use of Cash Collateral and Post-Petition Funding. The Debtors submit that the relief sought in the Motion is necessary to prevent immediate and irreparable harm to the chapter 11 estates of the Debtors (the "Estates") that would otherwise result if the Debtors were prevented from using Cash Collateral and obtaining post-petition financing on a final basis, which will enable the Debtors to maintain the Property, thereby preserving the value of the assets of their Estates, and providing an opportunity to sell the Property and otherwise implement the Plan.

G.    Cash Collateral and DIP Loan.  Subject to the terms of that certain letter agreement (the "DIP Amendment") entered into among Senior Agent, Senior Lenders and Debtors and entry of this Final Order, Senior Agent and Senior Lenders are willing to permit the Debtors to use cash collateral (as defined by Section 363(a) of the Bankruptcy Code, including, any pre-petition proceeds and, subject to Section 552 of the Bankruptcy Code, any and all post-petition proceeds of the Pre-Petition Collateral (as defined below) (collectively, the "Cash Collateral")) and are willing to permit the Debtors to operate under the Senior Loan Agreement (as defined below) as modified in certain respects by the DIP Amendment and this Final Order, and to provide credit (the "DIP Loan") to the Debtors during the period from the date of this Final Order through and until the Loan Payment Date (as defined below) (such period, the "Financing Period") on substantially the same terms and conditions as applied prior to the Petition Date, as amended and modified by, the DIP Amendment and the other DIP Loan Documents (as defined below) and pursuant to this Final Order.  The Senior Loan Agreement (as defined below), as amended by the DIP Amendment and this Final Order, shall be referred to herein as the "Amended Senior Loan Agreement."  Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the Amended Senior Loan Agreement or the Motion, as the case may be.

H.    No Other Sources of Funds.  Use of Cash Collateral alone may be insufficient to meet the Debtors' immediate and ongoing post-petition liquidity needs.  In addition, due to the Debtors' distressed financial condition and given the favorable terms of the DIP Loan proposed by Senior Agent and the Senior Lenders, the Debtors are satisfied that it would be futile, under the circumstances, to pursue alternative post-petition financing in the form of: (1) unsecured credit allowable as an administrative expense under Section 503(b)(1) of the

Bankruptcy Code; (2) unsecured credit allowable under Sections 364(a) and 364(b) of the Bankruptcy Code; or (3) secured credit pursuant to Section 364(c) of the Bankruptcy Code, on terms and conditions more favorable to their Estates than those offered by Senior Agent and Senior Lenders, as evidenced by the Interim Order, this Final Order, the Amended Senior Loan Agreement and the other DIP Loan Documents (as defined below).

I.    Good Faith.  The use of Cash Collateral, terms of the DIP Loan Documents (as defined below), the Interim Order, this Final Order, and the DIP Loan contemplated herein have been negotiated at arms' length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, are enforceable in accordance with their terms and have been entered into in good faith.  The Senior Agent's consent to the use of Cash Collateral and any credit extended and loans made to the Debtors by Senior Agent and/or Senior Lenders pursuant to the Amended Senior Loan Agreement shall be deemed to have been in good faith, and the Senior Agent and Senior Lenders shall be entitled to the benefits provided by Section 364(e) of the Bankruptcy Code.

J.    Cause Shown.  Good cause has been shown for the entry of this Final Order.  Among other things, entry of this Final Order will enable the Debtors to pay expenses required to maintain the Property, thereby preserving the assets of their Estates, will increase the possibility of a successful sale of the Property and implementation of the Plan, and will avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their creditors and their Estates.

K.    Pre-Petition Loan Documents.

(i)    Subject only to Paragraph 23 hereof, the Debtors are jointly and severally indebted to Senior Agent and Senior Lenders pursuant to a Consolidated, Amended and Restated Loan Agreement dated as of December 15, 2006 (as amended in writing prior to the Petition Date, the "Senior Loan Agreement"), in the principal amount of, as of the Petition Date, not less than $190,000,000, plus accrued pre-petition interest and costs and fees (including, without limitation, protective advances and professional fees and expenses) and other Obligations under and as defined in the Senior Loan Agreement (collectively, the "Pre-Petition Obligations").

(ii)    The Pre-Petition Obligations are evidenced by: (i) that certain Promissory Note, dated as of December 15, 2006, in the principal amount of $95,000,000, made by the Debtors to iStar Financial Inc.; (ii) that certain Promissory Note, dated as of December 15, 2006, in the principal amount of $70,000,000, made by the Debtors to PB (USA) Realty Corporation; and (iii) that certain Promissory Note, dated as of December 15, 2006, in the principal amount of $25,000,000, made by the Debtors to PB Capital Corporation (collectively, the "Senior Note") and are secured by, among other things, that certain Consolidated, Amended and Restated Deed of Trust, Security Agreement, Financing Statement, Fixture Filing and Assignment of Rents dated as of December 15, 2006, made by the Debtors for the benefit of Senior Agent (as supplemented, amended or otherwise modified in writing from time to time prior to the Petition Date, the "Senior Mortgage," and together with the Senior Loan Agreement, the Senior Note and all other Loan Documents and Security Documents, including Guaranties issued in connection therewith, as supplemented, amended or otherwise modified in writing from time to time prior to the Petition Date, the "Pre-Petition Loan Documents"), which

- 6 -

Senior Mortgage encumbers the Property.  The Pre-Petition Obligations are also secured by a continuing perfected Lien on and security interest in all Pre-Petition Collateral (as defined below).

(iii)　　All collateral, which secures the Pre-Petition Obligations, and all pre- and post-petition proceeds thereof, shall be referred to herein as the "Pre-Petition Collateral."

L.　　Perfection of Senior Agent's Security Interests.  Subject only to Paragraph 23 hereof, Senior Agent properly perfected its security interests in the Pre-Petition Collateral by filing a series of UCC-1 financing statements against the Debtors with the proper offices for the perfection of such security interests and by recording the Senior Mortgage in the proper office for the perfection of such security interests.

M.　　Validity and Allowance of Pre-Petition Obligations.  Subject only to Paragraph 23 hereof, as of the Petition Date: (i) the Pre-Petition Loan Documents are valid and binding agreements and obligations of the Debtors; (ii) the amount of the Pre-Petition Obligations is due and payable to Senior Agent and Senior Lenders as a secured claim in an amount not less than the amount set forth in finding paragraph K(i) above; (iii) Senior Agent's liens on and security interests in the Pre-Petition Collateral are valid, perfected, enforceable, non-avoidable and, except as specifically permitted under the Pre-Petition Loan Documents, first priority liens and security interests, and Senior Agent's and Senior Lenders' pre-petition claims against the Debtors and the Estates created by the filing of the Cases are allowed and are valid, enforceable and non-avoidable in the amount of the Pre-Petition Obligations; and (iv) the Debtors (and any party acting by, through or on behalf of the Debtors) may not assert any claim, counterclaim, setoff or defense of any kind or nature that would in any way affect the validity,

enforceability and non-avoidability of the Pre-Petition Obligations or Senior Agent's security interests in and liens on the Pre-Petition Collateral or, except as agreed to by the Senior Agent and Senior Lenders in writing, reduce or affect the obligation to pay the Pre-Petition Obligations. The Debtors and their Estates hereby release and discharge Senior Agent and Senior Lenders, together with their respective affiliates, agents, attorneys, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part: (i) the DIP Amendment; (ii) any aspect of the post-petition relationship between any Debtor or its Affiliates relating to any of the DIP Loan Documents or any transaction contemplated thereby, on the one hand, and any or all of Senior Agent and the Senior Lenders and their respective Affiliates, on the other hand; or (iii) any other acts or omissions by any or all of the Senior Agent and Senior Lenders in connection with the DIP Amendment or their post-petition relationship with the Debtors relating to any of the DIP Loan Documents or any transaction contemplated thereby. Senior Agent and Senior Lenders shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of their Pre-Petition Collateral or other DIP Collateral (as defined below).

N.      Basis for Partial Relief from Stay. In order to be able to continue to protect Senior Agent's and Senior Lenders' interest in the Pre-Petition Collateral, and to permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to, the DIP Loan Documents and this Final Order, and for other good cause shown, the Debtors have agreed to the modifications of the automatic stay as provided for herein.

O.      No Liability to Third Parties. In making decisions to permit the use of Cash Collateral and to advance the DIP Loan to the Debtors, in administering the DIP Loan, in

accepting the Initial Approved Budget ( as defined below) or any future Supplemental Approved Budget (as defined below) or in taking any other actions permitted by this Final Order, Senior Agent and the Senior Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

P.    Factual Findings/Legal Conclusions.  Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes and contains legal conclusions.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Authorization to Use Cash Collateral and to Borrow; DIP Loan Documents.  The Motion is granted on a final basis in accordance with the terms of this Final Order.  Subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents, the Debtors are authorized on a final basis, pursuant to Section 363(c)(2)(B) of the Bankruptcy Code, to use Cash Collateral, to enter into, or continue to operate under, as applicable, the following documents (collectively, the "DIP Loan Documents"), and to borrow money up to the Maximum DIP Commitment (defined below) during the Financing Period, and to perform their obligations thereunder and in accordance with the terms thereof and in accordance with this Final Order, and such DIP Loan Documents shall be deemed binding on and enforceable against the Debtors, their Estates and their respective successors and assigns: (a) the DIP Amendment attached hereto as **Annex A**; (b) the Amended Senior Loan Agreement; (c) all other Pre-Petition Loan Documents, as amended by the DIP Amendment; and (d) all such financing statements, notices, schedules, other security or other agreements as may be necessary

or required to evidence their obligations to Senior Agent and Senior Lenders, to consummate the terms and provisions of the Motion and this Final Order and to evidence perfection of the liens and security interests given to Senior Agent for the benefit of Senior Agent and Senior Lenders pursuant to the Interim Order and this Final Order, whether hereinbefore or hereafter executed and delivered by or on behalf of any or all of the Debtors. The Debtors are further authorized to execute and deliver any amendments or modifications to any of the DIP Loan Documents and/or any waivers as may be agreed upon in writing by the Debtors, the Senior Agent and the Senior Lenders necessary or appropriate to implement the terms of the DIP Amendment, without the need of further notice, hearing or order of this Court. All indebtedness and obligations incurred on or after the Petition Date by the Debtors to Senior Agent and/or Senior Lenders pursuant to the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses (including reasonable attorneys' fees and expenses), as well as any other obligations under the Pre-Petition Loan Documents or the DIP Loan Documents incurred on or after the Petition Date are referred to herein as the "Post-Petition Obligations," and together with the Pre-Petition Obligations, as the "Collective Obligations."

2.     Maximum Amount of Borrowing. The outstanding principal amount of Post-Petition Obligations (including any amounts charged to the DIP Loan pursuant to the DIP Loan Documents) owing by any Debtor under this Final Order and the DIP Loan Documents at any point in time shall not exceed $1,308,055 (and shall also be subject to all other limitations set forth in the Amended Senior Loan Agreement and the other DIP Loan Documents) (the "Maximum DIP Commitment"); provided, however, that if Senior Agent and/or Senior Lenders advance funds or other extensions of credit in excess of this amount (or any other limitations in the DIP Loan Documents), such advances (and any other indebtedness in excess of such amount)

shall constitute Post-Petition Obligations of the Debtors entitled to the benefits of the DIP Loan Documents and this Final Order.

3. _Budget; Use of Cash Collateral and DIP Loan._ Senior Agent and Senior Lenders have reviewed and approved the budget dated December 24, 2010, attached to the DIP Amendment setting forth by line item all projected cash receipts and cash disbursements for the time period from the Petition Date through February 26, 2010 ("Initial Approved Budget"). Senior Agent, Senior Lenders and Debtors have agreed that, subject to the Carve-Out and any Senior Agent Payments (as each such term is defined below), the payment of any expenses, whether through the use of Cash Collateral or proceeds of the DIP Loan, shall be made only pursuant to the Approved Budget (defined below); provided, however, that total cash expenditures may exceed the amounts set forth in the Approved Budget, provided that such cash expenditures do not, in the aggregate, exceed 110% of the total cash expenditures set forth in the Approved Budget in any fiscal month without the prior written consent of Senior Agent and provided further that in no event shall amounts paid for professional fees and management fees exceed the amount provided for such items in the Approved Budget. Further, Senior Agent may, in its sole discretion, as additional adequate protection, use Cash Collateral or, subject to the Maximum DIP Commitment, make advances under the DIP Loan for the purposes of paying costs of maintenance, construction, alteration, repair, preservation, marketing or operation of the Property, or otherwise to preserve or protect the DIP Collateral (as defined below) or the liens thereon, whether or not such item of expense is specifically set forth in the Approved Budget (collectively, the "Senior Agent Payments"). All Senior Agent Payments shall be added immediately to the Post-Petition Obligations and Senior Agent shall inform the Debtors of any Senior Agent Payment within two (2) Business Days of making such payment. The Initial

Approved Budget may be modified or supplemented from time to time by additional budgets as required by, or as may be necessary or appropriate in connection with, the Amended Senior Loan Agreement (covering any time period covered by a prior budget or covering additional time periods) to which Senior Agent, Senior Lenders and the Debtors agree in their respective sole discretion (each such additional budget, a "Supplemental Approved Budget"). The aggregate of all items approved by Senior Agent and Senior Lenders in the Initial Approved Budget and any and all Supplemental Approved Budgets (acceptable to Senior Agent, Senior Lenders and the Debtors in their respective sole discretion) shall constitute an "Approved Budget." Cash Collateral, the proceeds of any DIP Loans and all proceeds of DIP Collateral shall be used only as follows: (a) prior to the Loan Payment Date, for the payment of (i) the expenses set forth in any Approved Budget or (ii) any Senior Agent Payments (subject to the limitations and exceptions set forth in this paragraph, including but not limited to, any reductions to the Maximum DIP Commitment on account of any Senior Agent Payment); and (b) on or after the Loan Payment Date, first for the payment of any amounts constituting any part of the Carve-Out (as defined below) up to an aggregate amount not to exceed the unused portion of the Carve-Out, second, for payment of the Post-Petition Obligations, third, for payment of the Pre-Petition Obligations, and fourth, for the payment of any allowed administrative expenses or other claims in accordance with the provisions of the Bankruptcy Code and orders of this Court. All use of Cash Collateral, all advances and all extensions of credit shall be based upon the terms and conditions of the Amended Senior Loan Agreement. Cash Collateral and all funds borrowed under the Amended Senior Loan Agreement shall be used by the Debtors solely for the purposes set forth in the Amended Senior Loan Agreement.

4.     Interest, Fees and Costs.  All interest, fees, costs and expenses due on or after the Petition Date to Senior Agent and/or Senior Lenders under the DIP Loan Documents shall be charged to the Debtors as required by the applicable DIP Loan Documents and this Final Order and, subject to the Effective Date of the Plan, paid or discharged, as the case may be, in accordance with the Plan.

5.     Termination of Use of Cash Collateral and Post-Petition Credit; Term of Amended Senior Loan Agreement.  The Amended Senior Loan Agreement, and Senior Agent's and each Senior Lender's willingness to permit the use of Cash Collateral and to make DIP Loans shall immediately and automatically terminate (except as Senior Agent and Senior Lenders may otherwise agree in writing in their sole discretion), and all Collective Obligations shall be immediately due and payable in cash and all authorization to use Cash Collateral shall terminate (except as Senior Agent and Senior Lenders may otherwise agree in writing in their sole discretion or as otherwise set forth below) upon the earliest to occur of the following (the "Loan Payment Date"):

(i)     March 16, 2010, if the Court has not entered an order approving the Disclosure Statement under Section 1125 of the Bankruptcy Code and confirming the Plan under Section 1129 of the Bankruptcy Code, which orders may be combined into a single order and which is/are satisfactory in all respects to Senior Agent; provided, however, such date may be extended by written agreement between the Senior Agent and the Debtors on or prior to the occurrence of such date;

(ii)    the Effective Date of the Plan, in which event the Collective Obligations shall be repaid or discharged, as the case may be, in accordance with the Plan;

(iii)   the effective date of any confirmed plan of reorganization in any Case (other than the Plan) ;

(iv)    the date of final indefeasible payment and satisfaction in full in cash of the Collective Obligations and termination of all commitments pursuant to the Amended Senior Loan Agreement;

(v)     the dismissal or conversion to chapter 7 of any Case;

(vi)     the date of appointment of any trustee or any examiner with expanded powers in any Case;

(vii)     consummation of the sale of all or substantially all of the assets of any Debtor;

(viii)     the entry by the Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entity other than Senior Agent with respect to the Pre-Petition Collateral or without consent of the Senior Agent;

(ix)     the failure by the Debtors to deliver to the Senior Agent any of the documents or other information required to be delivered pursuant to this Final Order within five (5) days after the Debtors receive written notice from the Senior Agent; provided, however, that such five (5) day period may be extended by written agreement between the Senior Agent and the Debtors on or prior to the expiration of such;

(x)     the occurrence of a Termination Event under the Settlement Agreement by and among the Senior Agent, the Debtors, Joseph Neumann and Samuel Weiss, dated as of December 24, 2009 (the "Senior Settlement Agreement"), and/or the Settlement Agreement by and among Broadway 401 Massachusetts Ave Mezz LLC, Broadway 425 Massachusetts Ave Mezz TIC LLC, and Broadway 425 Massachusetts Ave Mezz LLC, Joseph Neumann, Samuel Weiss and the Debtors dated as of December 24, 2009 (the "Mezz Settlement Agreement") (the term "Termination Event" shall have the meaning given to such term in the Senior Settlement Agreement and the Mezz Settlement Agreement, respectively);

(xi)     without the consent of the Senior Agent, the entry of an order of the Court (other than the Interim Order or this Final Order) approving the terms of any debtor in possession financing for the Debtors unless the Collective Obligations are indefeasibly paid in full;

(xii)     the entry of an order of any court reversing, staying, vacating or otherwise modifying in any material respect the terms of this Final Order; or

(xiii)     the breach by the Debtors of any provision of this Final Order.

Each of the events described in subsections (iv), (v), and (vii)-(xii) of this Paragraph 5 shall be referred to in this Final Order as a "Post-Petition Event of Default."

6.     Sections 506(c) and 552(b). From and after the Petition Date, the Senior Agent and the Senior Lenders are and shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Senior Agent or the Senior Lenders with respect to any proceeds of any of the Pre-Petition Collateral. No costs or expenses of administration, including fees and expenses of any professional person, which have been or may be incurred in the Cases at any time shall be charged or assessed against or recovered from the Pre-Petition Collateral, the Senior Agent, the Senior Lenders, or any of their respective claims pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise by, through, or on behalf of the Debtors, including without limitation, any trustee appointed or elected in any of the Cases or in any subsequent case under chapter 7 of the Bankruptcy Code for any Debtor, without the prior written consent of the Senior Agent and the Senior Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by, either with or without notice to, Senior Agent or Senior Lenders. Except as set forth herein, Senior Agent has not consented or agreed to the use of Cash Collateral.

7.     Security for Post-Petition Obligations and Adequate Protection for Interest in Pre-Petition Collateral. Subject only to the limitations in ordering Paragraph 23, as security for the DIP Loan and as adequate protection for Senior Agent's and Senior Lenders' interest in the Pre-Petition Collateral:

> (i)     Senior Agent, for the benefit of Senior Agent and Senior Lenders, is hereby granted replacement liens ("Replacement Liens") on all DIP Collateral, subject and junior only to the Post-Petition Liens (described in the following sub-clause) and the Carve-Out.
>
> > a.  To the extent any Cash Collateral was used by the Debtors prior to the date of entry of this Final Order, but after the Petition Date, the adequate protection provided pursuant to this Final Order shall also apply to provide Senior Agent

and the Senior Lenders with adequate protection against any diminution in their interests in the Pre-Petition Collateral resulting from such use of Cash Collateral.

b. Except as provided in this Final Order with respect to the Post-Petition Liens, the Replacement Liens shall not be subject to or *pari passu* with any lien on the Post-Petition Collateral by any order subsequently entered in these Cases.

c. The Replacement Liens were perfected automatically upon entry of the Interim Order, and such perfection is ratified and affirmed by this Final Order, without the necessity of filing any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any Post-Petition Collateral or Pre-Petition Collateral.

(ii) Senior Agent, for the benefit of Senior Agent and Senior Lenders, is hereby granted, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) (1) of the Bankruptcy Code, a first lien (the "Post-Petition Liens") subject only to Prior Claims (as defined below), on all DIP Collateral.

a. As used herein, the term "DIP Collateral" shall include all of the Debtors' respective real and personal property and assets, including all of the Pre-Petition Collateral and, subject to the limitations of Paragraph 23 hereof, all claims of each Debtor under the Bankruptcy Code (including, without limitation, avoidance claims under Sections 544, 545, 547, 548, 551 and/or 553, which avoidance claims shall collectively be referred to as the "Avoidance Actions").

b. As used herein, the term "Prior Claims" shall mean: (i) the pre-petition liens and security interests of Senior Agent and/or any Senior Lender; (ii) any non-avoidable, valid, enforceable and perfected liens and security interests in favor of any person or entity on or in the assets of the Debtors, which existed on the Petition Date (including any valid liens and security interests in existence on the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code) and are not subject to Section 552(a) of the Bankruptcy Code; but only to the extent such liens and security interests are superior in priority, after giving effect to any existing subordination or

intercreditor arrangements, to the pre-petition liens and security interests of Senior Agent and/or any Senior Lender; and (iii) the Carve-Out (as defined below).

c. Other than the first priority liens and security interests in favor of Senior Agent for the benefit of Senior Agent and Senior Lenders pursuant to the DIP Loan Documents and this Final Order and the Prior Claims, no other claims, liens or security interests, whether prior to or *pari passu* with the claims, liens or security interests of Senior Agent, shall attach to the DIP Collateral in these or any subsequent or superseding cases (including, without limitation, any conversion of any Case to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto (collectively, "Successor Case")), without the express written consent of Senior Agent (which consent may be withheld in its sole discretion).

d. Senior Agent at its option may release at any time from its liens and security interests any assets determined by Senior Agent to have a risk of environmental liabilities which Senior Agent in its sole discretion deems unacceptable.

e. Nothing herein shall be construed to divest any Debtor of control over the exercise or non-exercise of the rights or powers under the Bankruptcy Code that may give rise to recoveries under Avoidance Actions.

f. In addition, except to the extent otherwise expressly set forth in this Final Order, or in a written instrument, agreement or other document executed by Senior Agent and Senior Lenders, no liens or security interests granted to Senior Agent and no claim of Senior Agent and/or any Senior Lender, shall be subject to subordination to any other liens, security interests or claims under Section 510 of the Bankruptcy Code or otherwise. Any security interest or lien upon the DIP Collateral which is avoided or otherwise preserved for the benefit of any Estate under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the security interests and liens of Senior Agent upon the DIP Collateral.

8. <u>Limitations on Liens on Avoidance Actions</u>. Senior Agent's post-petition liens on and security interests in Avoidance Actions and the proceeds thereof shall be subject and subordinate in all respects to the aggregate amount of the Carve-Out (as defined below).

9. **Perfection of Liens.** All liens on and security interests in the DIP Collateral granted to Senior Agent by the Interim Order and this Final Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no other action shall be required to effect such perfection; provided, however, that notwithstanding the provisions of Section 362 of the Bankruptcy Code, Senior Agent may and is hereby authorized, at its sole option, file or record or cause the Debtors to execute, file or record, at the Debtors' expense, any perfection documents Senior Agent may require, and the Debtors are directed to cooperate and comply therewith, with such documents deemed to have been filed or recorded as of the Petition Date but with the priorities as set forth herein. Such expense shall be in accordance with, and included in, the Approved Budget. Senior Agent may (in its discretion), but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of Senior Agent's interests in the DIP Collateral.

10. **Waiver.** Each Debtor and its Estate hereby irrevocably waives, and any party in interest acting by, through or on behalf of any Debtor is barred from asserting or exercising, any right without Senior Agent's and Senior Lenders' prior written consent (which may be withheld in their sole discretion) or without prior indefeasible payment and satisfaction in full of the Collective Obligations: (a) to grant or impose or request that the Court grant or impose under Section 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Collateral, which are *pari passu*, with or superior, to Senior Agent's liens on and security interests in such DIP Collateral; or (b) to modify or affect any of the rights of Senior

Agent and/or any Senior Lender under this Final Order or any DIP Loan Documents by any order entered in any Case or by any plan of reorganization confirmed in any Case.

11. <u>Modification of Automatic Stay.</u>

(A) Subject to subparagraph (B) of this Paragraph 11, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby vacated as to Senior Agent and Senior Lenders to permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to, the DIP Loan Documents and this Final Order without further application or motion to, or order from the Court; and neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit Senior Agent's and/or any Senior Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable). Subject to this Final Order, Senior Agent and Senior Lenders are hereby granted leave, among other things, to:

(i) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral;

(ii) charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein;

(ii) give any Debtor any notice provided for in any of the DIP Loan Documents or this Final Order; and

(iv) upon the occurrence of a Post-Petition Event of Default, and without application and motion to, or order from the Court or any other court and without any interference from any Debtor or any other party in interest:

a. terminate the Amended Senior Loan Agreement and/or the other DIP Loan Documents;

b.    cease making Loans or issuing and/or suspend or terminate any commitments to provide any of the foregoing;

c.    declare all Collective Obligations immediately due and payable;

d.    revoke the Debtors' right under this Final Order and the DIP Loan Documents to use Cash Collateral;

e.    set-off any amounts held as Cash Collateral or in any accounts of the Debtors; and

f.    take any action reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale.

(B)   Upon the occurrence of any Post-Petition Event of Default, and from and after the fourth (4th) day after the Senior Agent's delivery of a notice (the "Enforcement Notice") to counsel for the Debtors (and counsel for the Committee, if one has been appointed) (the "Enforcement Date") of Senior Agent's and Senior Lenders' intention to exercise its default-related rights and remedies:

(i)    the automatic stay pursuant to Section 362 of the Bankruptcy Code will be further modified and vacated so as to permit Senior Agent and Senior Lenders, without further application or motion to, or order from, the Court, to foreclose or otherwise enforce Senior Agent's security interests or liens in or on any or all of the DIP Collateral and/or to exercise any other default-related rights and remedies under the DIP Loan Documents or applicable law; and

(ii)   neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit Senior Agent and/or Senior Lenders from exercising or enforcing such default-related rights and remedies, regardless of any change in circumstances (whether or not foreseeable).  If any of the Debtors or any other person or entity challenges the occurrence of any Post-Petition Event of Default, any such objector's remedies shall be and hereby are limited to requesting a hearing before this Court at any time on or prior to the Enforcement Date (solely for the purpose of obtaining a judicial determination that no waived Post-Petition Event of Default has occurred and based on any such judicial determination solely to

enjoin Senior Agent and Senior Lenders from exercising any default-related rights or remedies). In any such hearing, the sole issue before the Court shall be whether a Post-Petition Event of Default has occurred and has not been timely cured, and the Debtors and any other party that is permitted to intervene or be heard at such hearing shall be precluded from raising or litigating any other issue, defense, claim or counterclaim (including, without limitation, any issue, defense, claim or counterclaim based on adequate protection). If Senior Agent and Senior Lenders are entitled, and have elected in accordance with the provisions hereof, to enforce Senior Agent's liens or security interests or exercise any other default-related remedies, the Debtors shall cooperate with Senior Agent and Senior Lenders in connection with such enforcement action by, among other things:

  a.  providing access to the Debtors' premises to representatives of the Senior Agent and Senior Lenders;

  b.  providing Senior Agent and Senior Lenders (including any collateral liquidator or consultant) and their representatives access to their books and records;

  c.  performing all other obligations set forth in the DIP Loan Documents; and

  d.  taking reasonable steps to safeguard and protect the DIP Collateral until Senior Agent and Senior Lenders can make adequate provision to protect and safeguard the DIP Collateral, and the Debtors shall not otherwise interfere or actively encourage others to interfere with the Senior Agent's and Senior Lenders' enforcement of their rights.

12.  <u>Priority of Obligations</u>. Any Cash Collateral and the net cash proceeds from any use, sale, lease, license or other disposition of any portion of the DIP Collateral outside of the ordinary course of business and outside of the Plan, and prior to the occurrence of any Post-Petition Event of Default, shall be distributed to the Senior Agent and shall be applied in the following order of priority:

  (i)  First, to pay any and all allowed administrative expenses in an amount not to exceed the Carve-Out (as defined below and as provided in Paragraph 14);

  (ii)  Second, to pay any allowed Prior Claims;

(iii)    Third, to pay any fees, expenses and accrued interest under the DIP Loan, including any costs associated with an enforcement action as described in Paragraph 5;

(iv)    Fourth, to prepay principal and any other amounts outstanding under the DIP Loan;

(v)    Fifth, to pay any fees, expenses, accrued interest, principal and any other amounts outstanding under the Senior Loan Agreement pursuant to the terms of such Senior Loan Agreement; and

(vi)    Sixth, to pay any and all allowed administrative expenses, allowed priority and other allowed secured claims.

13.    <u>Superpriority Claims</u>. Subject to the Carve-Out defined and described in Paragraph 14 below, the Post-Petition Obligations shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Case or any Successor Case), and shall at all times be senior to the rights of any Debtor, any successor trustee or estate representative in any Case or any Successor Case. Senior Agent and Senior Lenders shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral.

14.    <u>Carve-Out</u>. Subject to the remaining provisions of this paragraph, Senior Agent's and/or Senior Lenders' liens on and security interests in the DIP Collateral shall be subject only to: (i) amounts necessary to pay any unpaid fees payable pursuant to 28 U.S.C. § 1930 and any unpaid fees payable to the Clerk of this Court or the U.S. Trustee; (ii) so long as the Loan Payment Date has not occurred, administrative expenses of the kind specified in 11 U.S.C. §§ 330 and 331, including, but not limited to, the reasonable fees and expenses of the Debtor Professionals and the Committee Professionals (each as defined below) as the same may be due and payable; and (iii) following the occurrence of the Loan Payment Date, the allowed

professional fees and disbursements of the Debtor Professionals and the Committee Professionals incurred or accrued after the occurrence of the Loan Payment Date in an aggregate amount not to exceed $20,000.00 (which amount shall be in addition to any compensation previously awarded or incurred prior to the occurrence of the Loan Payment Date, but subject to Court approval) (the "Carve-Out"). For purposes of this Final Order: (i) the professionals retained by the Debtors pursuant to Section 327 of the Bankruptcy Code shall be referred to here as the "Debtor Professionals"; and (ii) the professionals retained by a Committee pursuant to Section 1103(a) of the Bankruptcy Code, if such a Committee is appointed, shall be referred to herein as the "Committee Professionals." Prior to the occurrence of the Loan Payment Date, the allowed professional fees and disbursements of the Debtor Professionals incurred or accrued prior to the occurrence of the Loan Payment Date shall be paid in compliance with the Approved Budget.

15. <u>Limitation on use of Carve-Out</u>. Notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, no proceeds of the DIP Loan or any other extensions of credit made by the Senior Lenders to the Debtors prior to the Petition Date, or, prior to payment in full in cash of the Collective Obligations, any Cash Collateral or DIP Collateral (or proceeds thereof) may be used to pay, any and all claims for services rendered by Debtor Professionals or, if such a Committee is appointed, the Committee Professionals, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Collective Obligations or the pre-petition and post-petition liens and security interests of Senior

Agent in the DIP Collateral (including the Pre-Petition Collateral); or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by Senior Agent and/or any Senior Lender of any of their rights and remedies under this Final Order and/or the DIP Loan Documents or Senior Agent's enforcement or realization upon any of the liens on or security interests in any DIP Collateral; it being understood that, if a Committee is appointed, Cash Collateral and, if needed, proceeds of the DIP Loan will cover such a Committee's fees and expenses incurred in connection with the investigation of the Senior Lenders' claims and pre-petition liens provided that fees and expenses related to such investigation shall not exceed $15,000.00. The Debtors, Senior Agent and Senior Lenders shall each retain their rights as a party in interest to object to any claims of any of the Debtor Professionals, Committee Professionals or any other professionals retained in the Cases, as applicable.

16. <u>Limitation on Use of Cash Collateral and DIP Loan</u>. Notwithstanding anything herein to the contrary, no Cash Collateral and no part of the DIP Loan may be used directly or indirectly by any of the Debtors, any Committee, except as permitted by Paragraph 15 and subject to the expiration of the Investigation Period (as defined below), or any other person or entity to: (i) object to or contest in any manner the Post-Petition Obligations, the Post-Petition Liens, the Pre-Petition Indebtedness, the Pre-Petition Liens, the Pre-Petition Obligations or any liens held by or granted to the Senior Agent or the Senior Lenders hereunder; (ii) to assert or prosecute any actions, claims or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) against any of the Senior Agent or Senior Lenders; (iii) to seek authorization for any party to use any of the Cash Collateral without the consent of the Senior Agent and Senior Lenders; or (iv) obtain liens that are senior to, or on a

parity with, the liens of the Senior Agent and Senior Lenders in the Post-Petition Collateral or the Pre-Petition Collateral, as applicable, or any portion thereof.

17.     Covenants.  Subject to this Final Order, the Debtors shall timely comply with all of the covenants set forth in the Amended Senior Loan Agreement and the other DIP Loan Documents.

18.     Books and Records.  Without limiting the rights of access and information afforded Senior Agent and Senior Lenders under the DIP Loan Documents, the Debtors shall be required to afford to Senior Agent and Senior Lenders and their representatives, agents and/or employees (including, without limitation, their auditors, appraisers and financial advisors) reasonable access to any Debtor's premises and their records and their representatives in accordance with the DIP Loan Documents and shall cooperate, consult with and provide to such Persons all such non-privileged information and documents as they may reasonably request in connection with the DIP Loan.  Without limiting the generality of the foregoing, the Debtors shall promptly provide to Senior Agent and Senior Lenders and their designated representatives any information or data reasonably requested to monitor the Debtors' compliance with the covenants in the Amended Senior Loan Agreement and the other provisions of the DIP Loan Documents and this Final Order and to perform appraisals or other valuation analyses of any property of any Debtor.

19.     Reservation of Additional Rights of Senior Agent and Senior Lenders. Senior Agent and Senior Lenders may petition this Court for any such additional adequate protection as they may reasonably require with respect to Pre-Petition Obligations, the Post-Petition Obligations, or otherwise, and nothing in this Final Order constitutes a finding with

respect to the adequacy of the protection of the Senior Agent's and Senior Lenders' interests in the Pre-Petition Collateral.

20.     No Waiver.  The rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of Senior Agent and Senior Lenders arising under this Final Order are in addition to, and not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, as pre-petition debtors, under the Pre-Petition Loan Documents.

21.     Order Binding on Successors.  The provisions of this Final Order shall be binding upon and inure to the benefit of Senior Agent, Senior Lenders, the Debtors, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors' Estates or of any estate in any Successor Case).  Except as otherwise explicitly set forth in this Final Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Final Order or the DIP Loan Documents.

22.     Effect of Dismissal, Conversion or Substantive Consolidation.  As long as any portion of the Collective Obligations remains outstanding, or any DIP Loan Document remains in effect, the Debtors shall not seek, and it shall constitute a Post-Petition Event of Default (and an automatic occurrence of the Loan Payment Date) if any of the Debtors seek, or if there is entered, an order dismissing any of the Cases.  If any Case is dismissed, converted, otherwise superseded or substantively consolidated, Senior Agent and Senior Lenders' rights and remedies under this Final Order and the DIP Loan Documents shall be and remain in full force and effect as if such Case had not been filed or such Case had not been dismissed, converted, superseded or substantively consolidated.  Furthermore, notwithstanding any such dismissal, conversion, supercission or substantive consolidation, all of the terms and conditions of this

Final Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

23. <u>Deadline for Objections to Senior Agent's and Senior Lenders' Pre-Petition Claim</u>. Notwithstanding anything contained herein to the contrary, the extent, validity, perfection and enforceability of the Pre-Petition Obligations and Senior Agent's liens on the Pre-Petition Collateral are for all purposes subject to the rights of any other party in interest, other than the Debtors, for the post-petition period ending on March 15, 2010 (the "<u>Investigation Period</u>"), to file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate or otherwise challenge the Pre-Petition Obligations and/or Senior Agent's pre-petition liens upon and security interests in the Pre-Petition Collateral. If such complaint is not timely filed within the Investigation Period: (i) the Pre-Petition Obligations and Senior Agent's security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowed as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Pre-Petition Collateral to the extent provided herein, and the Pre-Petition Obligations shall be allowed as fully secured claims under Sections 502 and 506 of the Bankruptcy Code; and (ii) the provisions of Paragraphs K, L and M shall be binding on all parties in interest.

24. <u>Effect of Modification of Order</u>. The Debtors shall not, without Senior Agent's and Senior Lenders' prior written consent, seek to modify, vacate or amend this Final Order or any DIP Loan Documents. If any of the provisions of this Final Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Collective Obligations outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and

enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Collective Obligations. Notwithstanding any such stay, modification or vacatur, any Collective Obligations outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Final Order, and Senior Agent and Senior Lenders shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such Collective Obligations.

     25.    <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Final Order and any provisions in any of the DIP Loan Documents, the provisions of this Final Order shall govern and control.

     26.    <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to use Cash Collateral and to obtain credit on the terms and conditions upon which the Debtors, Senior Agent and Senior Lenders have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Sections 363 and 364, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

27.   Order Effective.  This Final Order shall be effective as of the date of signature by the Court.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

IT IS SO ORDERED.

Dated: February 12 2010

_____
United States Bankruptcy Judge