IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Broadway 401 LLC, et al.,[1] | ) Case No. 10-10070 (KJC) |
| | ) |
| Debtors. | ) Jointly Administered |

**DECLARATION OF DAVID WELDLER IN SUPPORT
OF ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'
(A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125
AND 1126(b) OF THE BANKRUPTCY CODE, (B) FORM OF BALLOT, AND
(C) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND
(II) CONFIRMING THE DEBTORS' JOINT PREPACKAGED PLAN
OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

I, DAVID WELDLER, make this declaration, and to the best of my knowledge and after reasonable inquiry, state the following:

1. Broadway 401 LLC, Broadway Mass Associates LLC and Broadway Mass TIC I LLC are debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**") commenced voluntarily under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") in this Court on January 11, 2010 (the "**Petition Date**").[2] The Debtors are comprised of three (3) entities organized under the laws of the State of Delaware. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Broadway 401 LLC, a Delaware limited liability company (6772), Broadway Mass Associates LLC, a Delaware limited liability company (8668), and Broadway Mass TIC I LLC, a Delaware limited liability company (3760). The address for each Debtor is 80 Broad Street, New York, NY 10004.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.

2. On the Petition Date, the Debtors filed a pre-solicited Joint Plan of Reorganization of Broadway 401 LLC, Broadway Mass Associates LLC and Broadway Mass TIC I LLC Under Chapter 11 of the Bankruptcy Code (the "**Plan**") and disclosure statement relating to the Plan (the "**Disclosure Statement**"), each dated December 31, 2009. The votes of the Holders of Class 1 Senior Lender Claims, the sole impaired Class entitled to vote on the Plan, were solicited pre-petition pursuant to the Disclosure Statement, and that Class unanimously accepted the Plan.

3. I have served as Manager of each of the Debtors since 2006 and am generally familiar with the operations, financial affairs and books and records of the Debtors. I submit this declaration in support of the approval of the (a) adequacy of information set forth in the Disclosure Statement, (b) the sufficiency of the form of ballot used to solicit votes to accept or reject the Plan (the "**Ballot**"), (c) the sufficiency of the solicitation of votes and voting procedures (the "**Solicitation**") and Summary and Notice (defined below), and (d) the confirmation of the Plan. I am familiar with the terms of the Plan and the disclosure made in the Disclosure Statement. I am also familiar with the plan supplement referred to in the Plan (the "**Plan Supplement**"), and the documents attached thereto, which the Debtors filed with this Court on March 10, 2010. Together with the Debtors' counsel, I have reviewed the requirements for approval of the Disclosure Statement, the Solicitation and confirmation of the Plan under the applicable sections of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). If called as a witness at the combined hearing to consider approval by the Court of the Disclosure Statement, Ballot and Solicitation and confirmation of the Plan (the "**Confirmation Hearing**"), I would testify competently to the facts set forth in this declaration.

4. Except as otherwise indicated, all facts, statements and opinions set forth in this declaration are based on my personal knowledge, my review of relevant documents, or my opinion based on my experience and knowledge of the business, assets, and operations of the Debtors, and on information supplied to me by the Debtors' counsel and other parties in interest in the Cases.

5. The references to sections of the Bankruptcy Code and Bankruptcy Rules, and the underlying statutory provisions in this declaration have either been provided to me and/or reviewed with me by counsel to the Debtors in order to provide the context and statutory authority for the facts, statements and opinions made in this declaration.

6. Based on my personal involvement in the Plan and Disclosure Statement formulation process, and on discussions with the Debtors' advisors, I believe that the Disclosure Statement, Ballot, Solicitation, Summary and Notice (defined below) and Plan comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, that the Plan and the transactions contemplated thereby, including, the sale of the Property, was proposed in good faith, and that the Debtors, acting through their managers, members and professionals, have conducted themselves in a manner that complies with applicable law in relation to the foregoing.

7. As set forth more fully in my declaration in support of the Debtors' chapter 11 filings and "first day" orders [Docket No. 2], the Plan is the product of arduous and productive negotiations and part of a global resolution of myriad disputes and claims. Specifically, in December 2009, the Debtors finalized and entered into a global settlement with various parties in interest, including, among others, (i) the Senior Settlement Agreement among the Debtors, Joseph Neumann and Samuel Weiss (the "**Guarantors**"), the Senior Agent and Senior Lenders, and (ii) the Mezzanine Settlement Agreement, entered into among the

Mezzanine Agent and Mezzanine Lenders, the Debtors and the Guarantors. In general, the global settlements resolve complicated issues and disputes existing among such parties and resulted in the following: (a) an agreement to provide under the Plan for the conveyance of the Property free and clear of all Liens, Claims and Encumbrances to the Senior Agent's designee;[3] (b) the treatment of the Debtors' obligations under the Senior Loan Agreement and Mezzanine Loan Agreement, including the resolution of intercreditor matters between the Seniors Lenders and Mezzanine Lenders; (c) the treatment of all other claims against the Debtors and the Mezzanine Borrowers; (d) the resolution of a lawsuit commenced by McWilliams Ballard against the Debtors, the Guarantors, their affiliates and others; (e) the resolution of disputes regarding the application of the purchase price received pursuant to a sale of the Debtors' transferable development rights related to the Property; (f) the resolution of rights and claims with respect to the Debtors' OCIP Policy; and (g) the resolution of the Guarantors' obligations under the Senior Loan Agreement and Mezzanine Loan Agreement, and related litigation.

8. The Plan's primary purpose is to make the most of the Debtors' finite assets to maximize creditor recoveries and to bring about the resolution of the numerous disputes and claims discussed above. The Property is being sold following extensive marketing over a full year period, and to the best of my knowledge represents the highest and best value available in the marketplace. As required by the Purchaser, the Plan will convey clean title to the Property in exchange for Cash consideration of $167,000,000 (subject to certain adjustments) and will allow for the payment of all Allowed Administrative Claims, Priority Claims, Other Secured Claims, and Priority Tax Claims in full and allow for a distribution to Holders of Class 1 Senior Lender Claims in satisfaction of amounts owed to such Holders. Pursuant to the Disclosure

---

[3] Pursuant to the sale documents attached to the Plan Supplement, the purchaser of the Property, as designated by the Senior Agent, is ERP Operating Limited Partnership (the "**Purchaser**").

Statement, as of November 30, 2009, the Debtors owed the Senior Lenders approximately $213,606,724 in respect of principal, interest and other costs under the Senior Loan. Therefore, the Holders of Class 1 Senior Lender Claims will receive significantly less than is owed to them by the Debtors in respect of their Claims. The Debtors strongly believe that the Plan presents the best resolution of claims against the Debtors and recovery for its creditors under the circumstances.

### **The Disclosure Statement Contains Adequate Information**

9. On the basis of my personal knowledge about the events leading to the formulation of the Disclosure Statement, my understanding of the transactions and documents described therein, the events leading up to the Petition Date, and discussions I have had with Debtors' counsel regarding the applicable requirements of the Bankruptcy Code and Bankruptcy Rules, I believe that the Debtors have satisfied, and that the Disclosure Statement satisfies, all the applicable requirements for approval by the Court of the Disclosure Statement. The following sets forth the facts for which I have personal knowledge that support the requirements in section 1125 of the Bankruptcy Code.

10. I understand that in the absence of applicable nonbankruptcy law (of which I have been advised there is none), the Disclosure Statement must disclose "adequate information", as defined in section 1125(a)(1) of the Bankruptcy Code, in connection with the solicitation of votes on a reorganization plan. The Disclosure Statement contains appropriate and adequate information, including, but not limited to, a discussion of:

>   (i) an overview of the Plan, including a chart describing the treatment of each class;
> 
>   (ii) the operation of the Debtors' business;
> 
>   (iii) the indebtedness and corporate structure of the Debtors and information regarding claims and administrative expenses;

5

(iv) a disclaimer, indicating that no statements or information concerning the Debtors or their assets or securities has been authorized, other than those set forth in the Disclosure Statement;

(v) key events leading to the commencement of the Cases, including a full discussion of the terms of the various settlement agreements that underlie the Plan's terms;

(vi) information regarding a proposed purchaser of the Debtors' assets and the post-Effective Date status of the Debtors;

(vii) financial and valuation information and appraisals of the Debtors' property;

(viii) information regarding the future management of the Debtors following the Effective Date;

(ix) a liquidation analysis;

(x) a summary of the Plan;

(xi) risk factors affecting the implementation of the Plan;

(xii) requirements for confirmation of the Plan; and

(xiii) tax consequences of the Plan.

11. In addition, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan and a description of the voting process.

12. In light of the foregoing, I believe that the Disclosure Statement contains all relevant information typically required to be included in a disclosure statement as required under section 1125 of the Bankruptcy Code and should be approved by the Court.

### The Debtors' Ballot, Solicitation, Summary
### and Notice and Vote Tabulation Should be Approved

13. On the basis of my personal knowledge about the formulation of the Ballot and the performance of the Solicitation and vote certification, and discussions I have had with

Debtors' counsel regarding the applicable requirements of the Bankruptcy Code and Bankruptcy Rules, I believe that the Debtors have satisfied all the applicable requirements for approval by the Court of the Ballot, Solicitation, Summary and Notice and tabulation of votes on the Plan. The following sets forth the facts for which I have personal knowledge that support the requirements in sections 1125 and 1126 of the Bankruptcy Code.

14. I understand that Bankruptcy Rule 3017(d) sets forth the materials that generally must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization, including: "(1) the plan or a court-approved summary of the plan; (2) the disclosure statement approved by the court; (3) notice of the time within which acceptances and rejections of the plan may be filed; and (4) any other information as the court may direct . . ." I further understand that Bankruptcy Rule 3017(d) requires debtors to mail to all creditors and equity holders "notice of the time fixed for filing objections and the hearing on confirmation . . . in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan."

15. The Debtors directed their counsel, Lovells LLP, to send to all Holders of Class 1 Senior Lender Claims, which was the only Class of Claims or Interests entitled to vote on the Plan, a solicitation package on December 31, 2009, via UPS overnight delivery, which package included the Disclosure Statement, the Plan, the Ballot and notice of the deadline to submit the Ballot to accept or reject the Plan. I am advised by Debtors' counsel that the Ballot was based on Official Form No. 14, as modified to address the particular aspects of the Cases and to conform to the Plan. The Ballot and accompanying instructions advised that, in order to be counted as votes to accept or reject the Plan, the Ballot must be properly executed, completed,

7

and delivered to the Debtors' counsel so as to be received no later than January 8, 2010 (the "**Voting Deadline**").

16. The three Holders of Class 1 Senior Lender Claims, represented by counsel, had extensively negotiated and reviewed every aspect of the Plan and Disclosure Statement. With their consent, the Debtors' solicitation period ran for eight (8) calendar days. I believe that such solicitation period (together with their involvement in formulating the Plan) provided such Holders with ample opportunity to make an informed decision whether to accept or reject the Plan. Accordingly, I believe that the solicitation period was adequate, not unreasonably short, and appropriate under the circumstances of the Cases. Lovells LLP, the voting agent, determined that each Holder of a Class 1 Senior Lender Claim returned its Ballot prior to the Voting Deadline, that all such returned Ballots were validly completed, and that Holders of Class 1 Senior Lender Claims unanimously voted to accept the Plan. Lovells LLP filed a certification of the results of such votes with the Bankruptcy Court on the Petition Date [Docket No. 11].

17. In addition, on January 14, 2010, the Debtors caused to be mailed a summary of the Plan and notice of the Confirmation Hearing and relevant objection deadlines and procedures to all of their creditors and equity holders (the "**Summary and Notice**") including to Holders of Claims in Class 1 (Senior Lender Claims) Class 2 (Other Secured Claims), Class 3 (Other Priority Claims), Class 4 (Mezzanine Lender Claims), Class 5 (General Unsecured Claims) and Class 6 (Intercompany Claims) and Holders of Interest in Class 7 (Interests). Pursuant to the Plan, Holders of Claims in Class 1 are impaired under the Plan and entitled to vote on the Plan; Holders of Claims in Classes 2 and 3 are unimpaired under the Plan and are deemed to have accepted the Plan; and Holders of Claims in Classes 4, 5 and 6 and

Holders of Interests in Class 7 are impaired under the Plan, not entitled to receive or retain any property thereunder, and are deemed to have rejected the Plan. The Summary and Notice provided that copies of the Plan and the Disclosure Statement would be on file with the Clerk of the Bankruptcy Court after the Petition Date and could also be obtained at any time upon request from Debtors' counsel. No creditor or other party in interest filed an objection to the Disclosure Statement or to confirmation of the Plan, apart from the U.S. Trustee's limited objection to the Plan, which has been resolved. It is my belief that the Solicitation and Summary and Notice and afforded all parties in interest ample notice of the Confirmation Hearing and the deadline to file objections to the Disclosure Statement and/or Plan.

18. Based on the foregoing, I believe that the Ballot, Solicitation, Summary and Notice and tabulation of votes on the Plan satisfy the applicable requirements of the Bankruptcy Code and Bankruptcy Rules and should be approved.

### The Prepackaged Plan Satisfies Section 1129 of the Bankruptcy Code

19. On the basis of my personal knowledge about the events leading to the commencement of the Cases, my understanding of the transactions and documents set forth or referred to in the Plan and/or Plan Supplement, the events that have occurred in the Debtors' Cases, and discussions I have had with the Debtors' counsel regarding various orders entered during the Cases and the applicable requirements of the Bankruptcy Code and Bankruptcy Rules, I believe that the Debtors have satisfied, and that the Plan satisfies, all the applicable requirements for confirmation by the Court of the Plan pursuant to section 1129 of the Bankruptcy Code.

20. The following sets forth the facts for which I have personal knowledge that support each of the requirements in section 1129 of the Bankruptcy Code.

21. <u>Section 1129(a)(1) of the Bankruptcy Code</u>. The Plan includes the following provisions:

- <u>Sections 1122 and 1123(a)(1) of the Bankruptcy Code</u>: Sections 3.01 and 3.02 of the Plan designate Classes of Claims and Interests, other than Claims for administrative expenses, statutory fees payable to the United States Trustee, and unsecured tax claims of governmental units. Each Class contains only Claims or Interests that are substantially similar to each other.

- <u>Section 1123(a)(2) of the Bankruptcy Code</u>: Sections 3.01 and 3.02 of the Plan identify each Class of Claims and Interests, whether impaired or unimpaired, under the Plan.

- <u>Section 1123(a)(3) of the Bankruptcy Code</u>: Section 3.02 of the Plan sets forth the treatment of impaired and unimpaired Claims and Interests.

- <u>Section 1123(a)(4) of the Bankruptcy Code</u>: Section 3.02 of the Plan provides that the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such class.

- <u>Section 1123(a)(5) of the Bankruptcy Code</u>: Article 5 of the Plan and the various documents and agreements attached to the Plan Supplement provide the mechanisms necessary to implement the Plan, including, without limitation, the (a) sale of the Property to the Purchaser, (b) receipt of Cash necessary to make payments pursuant to the Plan, (c) cancellation of certain agreements and discharge of obligations, (d) release of liens, claims and interests, (e) performance of any necessary or optional corporate action, including provision for the dissolution of the Debtors after the Effective Date, and (f) general settlement of Claims and Interests.

- <u>Section 1123(a)(6) of the Bankruptcy Code</u>. The Plan does not provide for the issuance of nonvoting equity securities.

- <u>Section 1123(a)(7) of the Bankruptcy Code</u>. The Debtors' current managers and members will continue in place after the Effective Date solely to assist with the winding-up of the Debtors' business and the dissolution of the Debtors following the Effective Date.

22. <u>Section 1123(b)(6) of the Bankruptcy Code and Releases, Etc.</u> The Plan contains release, indemnification, and exculpation provisions that were an integral component of the complex negotiations and compromises underlying the Plan. Based on my knowledge of the

negotiations, these provisions are fair and reasonable, and either mutual, consensual, based upon pre-Petition Date settlement agreements and releases and/or otherwise supported by consideration, and are essential to the reorganization and the realization of substantial value through the sale of the Property to the Purchaser.

23. The releases and exculpations set forth in the Plan are the product of extensive negotiations among the Debtors and other parties in interest, including the Senior Agent, Senior Lenders, Mezzanine Agent and Mezzanine Lenders, and were necessary to the formation of the consensus by such parties to support the Plan. Without the releases, the Debtors would not have obtained the unanimous support of the Holders of Class 1 Senior Secured Claims which has enabled them to negotiate the financial restructuring accomplished by the Plan. The significance attached to the releases by the parties whose cooperation was necessary to the Plan, the significant consideration given by the released parties to obtain the releases, the increase in value available to creditors as a result of successfully consummating a prepackaged restructuring, and the resulting distributions under the Plan, all demonstrate that the releases are fair to the parties giving them. Without the consensus facilitated by the releases, I do not believe that the Debtors could have achieved the out-of-court solicitation of votes to accept or reject the Plan and the Property would have suffered a significant loss in value. In addition, the Purchaser required the inclusion in the Plan of the releases related to it. In accordance with the resolution of the limited objection filed by the U.S. Trustee, the Debtors, with the consent of the Senior Agent, agreed to add a provision to the Confirmation Order which, when entered by the Court, will modify Section 10.03 of the Plan to exclude all Holders of Class 5 General Unsecured Claims from those entities giving releases pursuant to such section of the Plan.

24. <u>Section 1129(a)(3) of the Bankruptcy Code (Plan Proposed in Good Faith)</u>. The Plan (including all documents necessary to effectuate the Plan) was developed and negotiated in good faith and at arms'-length among representatives of the Debtors and the Senior Lenders after an extensive sales and marketing process and many months of analysis and negotiations involving numerous proposals, including proposals solicited by the Senior Agent from the Purchaser and other bidders. Thus, the Plan, including the sale of the Property and the other transactions contemplated thereby, was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and implementing the resolution of numerous disputes and claims among the Debtors, the Senior Lenders, the Mezzanine Lenders and other third parties. Once the Senior Agent selected the proposal from the Purchasers as providing the highest and best recovery for the Debtors' creditor constituencies, the Senior Agent, Senior Lenders, Purchaser and Debtors worked together to implement that result by and through the Plan. The transactions contemplated by the Plan provide for the distribution of significant value realized by the marketing and sale of the Property to be distributed to the Senior Lenders and administrative and priority creditors in accordance with the priorities and provisions of the Bankruptcy Code and in accordance with the Plan.

25. <u>Section 1129(a)(4) of the Bankruptcy Code (Payments for Services or Costs and Expenses)</u>. As of the date hereof, no payments have been made to the Debtors' retained Professionals for services rendered after the Petition Date and all payments to such Professionals are subject to the approval of this Court pursuant to the terms of the orders authorizing retentions of the Debtors' Professionals and the Bankruptcy Code. From and after the Effective Date, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, the reasonable legal, professional, or other fees and

expenses related to implementation and Consummation of the Plan incurred by the Debtors shall be paid by the Senior Lenders subject to the limitations provided in the Plan without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, the Plan provides that the Court shall retain jurisdiction to "grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Confirmation Date." The Debtors' agreements with their own Professionals have been disclosed to and approved by the Court.

26. <u>Section 1129(a)(5) of the Bankruptcy Code (Members and Managers)</u>. In accordance with Section 5.05 of the Plan, the Confirmation Order provides that the Debtors will be dissolved under state law within 120 days of the Effective Date and that the Debtors' current managers and members will continue in office until the Debtors are dissolved in order to assist with the wind-up of the Debtors' affairs and the dissolution itself. The Debtors' existing managers and members have knowledge of the Debtors' operations, business, accounts, finances, and business relationships and their cooperation is necessary to effectuate the transactions contemplated under the Plan, and they will be required to dissolve the Debtors following the Effective Date. The only payments to management consist of the monthly $10,000 fee I am receiving from the Senior Lenders in order to help implement the Plan and the sale of the Property on the Debtors' behalf.

27. <u>Section 1129(a)(6) of the Bankruptcy Code (No Rate Changes)</u>. The Debtors' business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

28. <u>Section 1129(a)(7) of the Bankruptcy Code (Best Interests Test)</u>. The Debtors, in consultation with their counsel, have prepared a liquidation analysis as set forth in Article VI(C)(1) and Exhibit D to the Disclosure Statement, both of which describe the value of the Debtors' estates if their assets were liquidated in chapter 7 and the estimated recoveries holders of claims or interests would receive in that event (the "**Liquidation Analysis**"). The Liquidation Analysis concludes that under the Plan each Holder of allowed Claims or Interests would recover not less than such Holder would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. The Liquidation Analysis also concludes that chapter 7 liquidations would result in substantial diminution in the value to be realized for creditors, as compared to distributions under the Plan, because of, among other factors: (i) the inability to realize the maximum value of the Debtors' assets due to the substantial negative impact of conversion to chapter 7 cases; (ii) additional costs and expenses involved in the appointment of a trustee, attorneys, accountants, brokers, appraisers, and other professionals to assist and advise the trustee in the chapter 7 cases; and (iii) the substantial time that would elapse before distributions would be made by the trustee.

29. <u>Section 1129(a)(8) of the Bankruptcy Code (Acceptance by Certain Impaired Classes)</u>. As set forth in the voting certification prepared and filed by Lovells LLP, Holders of Class 1 Senior Lender Claims unanimously voted to accept the Plan. As discussed above, Holders of Claims in Classes 4 (Mezzanine Lender Claims), 5 (General Unsecured Claims) and 6 (Intercompany Claims) and Interests in Class 7 are impaired under the Plan, not entitled to receive or retain any property thereunder, and are deemed to have rejected the Plan.

30. <u>Section 1129(a)(9) of the Bankruptcy Code (Treatment of Administrative, Priority Non-Tax, Priority Tax, and Secured Tax Claims)</u>. Generally, the Plan provides that

14

holders of Claims entitled to priority shall be paid in full in Cash, unless such holder agrees to a different treatment. Specifically:

31. *Administrative Claims*. With respect to Administrative Claims, the Plan provides that each Holder of an Allowed Administrative Claim will be paid such Allowed Administrative Claim in accordance with the terms of the applicable contract or agreement governing such Claim, if any. Such section of the Plan further provides that, except to the extent a Holder of an Allowed Administrative Claim has been paid by the Debtors prior to the Effective Date or the Holder of an Allowed Administrative Claim and the Debtors agree otherwise, all other Holders of Allowed Administrative Claims will be paid, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim, in full in Cash on or as soon as reasonably practicable after the Effective Date.

32. *Other Priority Claims*. With respect to the payment of Other Priority Claims, the Plan provides that, except to the extent a Holder of an Other Priority Claim has been paid by the Debtors prior to the Effective Date or the Holder of an Allowed Other Priority Claim and the Debtors agree otherwise, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Other Priority Claim, one of the following alternative treatments: (1) to the extent an Other Priority Claim is Allowed on or prior to the Effective Date, such Claim shall be paid in full in Cash on or as soon as reasonably practicable after the Effective Date or (2) to the extent an Other Priority Claim is Allowed after the Effective Date, such Claim shall be paid thereafter either (i) in the ordinary course of business in accordance with applicable law or the terms of any agreement that governs such Other Priority Claim or (ii) in accordance with the course of practice between the Debtors and such Holder with respect to such an Other Priority Claim; or

(3) such other treatment so as to render the Allowed Other Priority Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

33. *Priority Tax Claims*. With respect to the payment of Priority Tax Claims, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, the Plan provides that, except to the extent a Holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or the Holder of an Allowed Priority Tax Claim and the Debtors agree otherwise, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors, each Holder of an Allowed Priority Tax Claim, if any, shall receive on account of such Allowed Priority Tax Claim: (1) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the Effective Date; or (2) Cash equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code (or such lesser rate as is agreed to by the Holder of such Holder of an Allowed Priority Tax Claim), payable over a period ending no later than five (5) years from the Petition Date; provided, however, that the Debtors have the right under the Plan to prepay such amounts at any time under the latter option.

34. *DIP Facility Claims*. With respect to payment of DIP Facility Claims, except to the extent a DIP Lender agrees otherwise, all Allowed DIP Facility Claims, if any, shall be paid in full on the Effective Date in full and final satisfaction, settlement, release and discharge of, and in exchange for, such DIP Facility Claims, out of cash collateral and/or the proceeds of sale of the Property.

35. Section 1129(a)(10) of the Bankruptcy Code (Acceptance by at Least One Impaired Classes of Claims). As noted, based on the voting certification prepared and filed by

16

Lovells LLP, Holders of Class 1 Senior Lender Claims, an impaired Class under the Plan, unanimously voted to accept the Plan.

36. <u>Section 1129(a)(11) of the Bankruptcy Code (Feasibility)</u>. For purposes of determining whether the Plan is feasible, *i.e.*, it is not likely to be followed by liquidation or the need for further financial reorganization, the Debtors have analyzed their ability to meet their obligations under the Plan. All distributions to be made pursuant to the Plan will be in Cash. Funding for such distributions will come from cash collateral and/or proceeds of the sale of the Property to the Purchaser. Therefore, the Debtors believe that they will have sufficient Cash to fund all distributions, fees and other costs contemplated under the Plan.

37. In addition, pursuant to the Plan and Confirmation Order, the Debtors will be dissolved within 120 days after the Effective Date.

38. <u>Section 1129(a)(12) of the Bankruptcy Code (Payment of Fees)</u>. The Plan provides that all fees and charges imposed pursuant to 28 U.S.C. § 1930, to the extent not previously paid, will be paid on the Effective Date or as soon thereafter as is practicable.

39. <u>Section 1129(a)(13) of the Bankruptcy Code (Continuation of Retiree Benefits)</u>. The Debtors are not obligated to pay any retiree benefits.

40. <u>Section 1129(a)(14) of the Bankruptcy Code (Domestic Support Obligations)</u>. The Debtors are not obligated to pay any domestic support obligations.

41. <u>Section 1129(a)(15) of the Bankruptcy Code (Objection to Plan of an Individual Debtor)</u>. The Debtors are not individuals.

42. <u>Section 1129(a)(16) of the Bankruptcy Code (Transfers of Property)</u>. The Debtors are not corporations or trusts that are not moneyed, business, or commercial corporations or trusts.

43. <u>Section 1129(b) of the Bankruptcy Code (Confirmation Over Dissenting Classes)</u>. Only Class 1 (Senior Lender Claims) was entitled to vote to accept of reject the Plan, and such Class has voted to accept the Plan. Holders of Claims in Classes 4 (Mezzanine Lender Claims), 5 (General Unsecured Claims) and 6 (Intercompany Claims) and Interests in Class 7 are impaired under the Plan, not entitled to receive or retain any property thereunder, and are deemed to have rejected the Plan. However, there are no Classes of Claims or Interests junior in right of priority to the Claims and Interests represented by Classes 4-7 that are entitled to receive or retain any property under the Plan. Therefore, it is my understanding that the Plan can be confirmed through "cramdown" under section 1129(b) of the Bankruptcy Code notwithstanding the non-acceptance by those Classes of Claims.

## Conclusion

In light of the foregoing, I believe that the relief being requested by the Debtors at the Confirmation Hearing, including approval of the Disclosure Statement and confirmation of the Plan, is appropriate, is in the best interest of all parties in interest and should be approved by the Court.

Executed this 11th day of March, 2010.

*[signed] David Weldler*

Name: David Weldler
Title: Manager